IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CLAYTON MATTHEW FRYE,

        Plaintiff,

v.                                CIVIL ACTION NO.   2:20-cv-00403

LINCOLN COUNTY COMMISSION, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Lincoln County Commission (the "County Commission"); Lincoln County Sheriff's Department (the "Department"); and Sheriff Gary Linville's ("Linville") (collectively, the "Defendants") Partial Motion to Dismiss.  (ECF No. 10.) For the reasons more fully explained below, Defendants' motion is **GRANTED**.

*I.    BACKGROUND*

This matter arises from law enforcement effectuating an arrest of the Plaintiff, Clayton Frye, in Yawkey, West Virginia, on March 20, 2020.  (ECF No. 1 at 1.)  At the relevant times, Plaintiff was a resident of Mount Gay, West Virginia.  (*Id.* at ¶ 1.)  The Department is a law enforcement agency and a subdivision of the County Commission in Lincoln County, West Virginia.  (*Id.* at ¶ 2.)  Sheriff Linville was the Sheriff for the Department.  (*Id.* at ¶ 3.)

The Complaint alleges that on March 20, 2020, Linville was dispatched to Gillenwater Road in Yawkey, West Virginia, in response to calls regarding Plaintiff.  (*Id.* at ¶¶ 5–6.)  Linville

1

arrived at the scene, immediately approached Plaintiff, swore at him, and then struck Plaintiff in the head and face with a closed fist. (*Id.* at ¶ 7.) Plaintiff was knocked to the ground because of this strike. (*Id.*) While Plaintiff lay on the ground, Linville then kicked Plaintiff in the side, screamed at him, and placed him under arrest. (*Id.* at ¶ 8.)

Plaintiff alleges that Linville filed a criminal complaint against him, charging Plaintiff with obstructing/resisting an officer, trespassing, tampering with an automobile, and burglary. (*Id.* at ¶ 9.) However, the criminal complaint was dismissed in its entirety on June 11, 2020, when Linville failed to appear for the preliminary hearing. (*Id.* at ¶ 10.)

Plaintiff filed the instant Complaint on June 15, 2020. (*See generally* ECF No. 1.) Plaintiff asserts six causes of action against the Defendants as a result of Linville's alleged actions. Count I asserts a state constitutional claim brought pursuant to Article III, Section 6 of the West Virginia Constitution. (*Id.* at 3–4.) Count II asserts a state-law vicarious liability claim against the Department. (*Id.* at 4–5.) Count III appears to assert a claim for punitive damages. (*Id.* at 5–6.) Count IV asserts a state-law battery claim against Linville. (*Id.* at 6.) Count V asserts a claim for state-law intentional infliction of emotional distress. (*Id.* at 6–7.) Finally, Count VI asserts a federal claim against all Defendants. (*Id.* at 7.) Count VI, though labelled as one cause of action, seems to advance two theories of liability. The first, asserted against Sheriff Linville, appears to advance an excessive force claim brough under 42 U.S.C. § 1983. (*Id.*) The second, and asserted against the County Commission and Department, seems to advance a municipal liability claim. (*Id.* at 7–8.)

Defendants filed the instant motion to dismiss on August 19, 2020 and seek to dismiss all claims asserted against the County Commission and the Department, as well as all the claims

asserted against Linville in his official capacity. (ECF Nos. 10, 11 at 2.) Plaintiff timely responded in opposition on August 31, 2020. (ECF No. 13.) Defendants filed their reply on September 8, 2020. (ECF No. 14.) With the briefing complete, the motion is ripe for adjudication.

## II. LEGAL STANDARD

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[ ] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

### III.  DISCUSSION

At the outset, the Court must disappointingly note that the Plaintiff's response falls well short of the standard that has come to be expected in federal court. To begin, Plaintiff has argued that Defendants' motion should not be granted because there are factual issues precluding summary judgment. (*See* ECF No. 13 at 2, 5.) Of course, the instant motion is a motion to dismiss, not a motion for summary judgment.[1] Incorrect standard notwithstanding, the Court shall begin its analysis in the order presented by Defendants.

---

[1] Compounding the numerous typographical errors riddled throughout Plaintiff's response, several counterarguments are posed to arguments that Defendants' did not even raise. Most noticeably, Plaintiff claims that Sheriff Linville raised qualified immunity against the causes of action asserted against him. (ECF No. 13 at 4.) Sheriff Linville made no such argument. (*See generally* ECF No. 11.) Moreover, Plaintiff argues that his "1983 malicious prosecution and state law malicious prosecution claims are legitimate[.]" (ECF No. 13 at 4.) Plaintiff has made no such claims in his Complaint. (*See* ECF No. 1.) Frankly, between the errors in grammar, punctuation, and citations, coupled with counterarguments to non-existent arguments and arguing claims not asserted, the Court has not had the displeasure of reading such a poor submission in quite some time. Plaintiff's counsel is reminded that the practice of law before this Court requires higher standards than what has been demonstrated here.

4

A. *Plaintiff's State Constitutional Tort Claim Pursuant to Article III, Section 6 of the West Virginia Constitution.*

Defendants argue that Plaintiff's constitutional tort claim, pursuant to Article III, § 6 of the West Virginia Constitution fails because a cause of action for monetary damages under this section has never been explicitly recognized by the West Virginia Supreme Court of Appeals. (ECF No. 11 at 4–6.) Plaintiff responds by apparently arguing that he has satisfied the "particularized showing" annunciated by the Supreme Court of Appeals in *Hutchinson v. City of Huntington*, 479 S.E.2d 649 (W. Va. 1996).[2] (ECF No. 13 at 5.)

During the pendency of this motion, the Supreme Court of Appeals answered a certified question posed to it by this Court, in which the Supreme Court of Appeals found that the state of West Virginia does not recognize a private right of action for monetary damages for violations of Article III, § 6 of the state constitution. *See* Syl. Pt. 3, *Fields v. Mellinger*, No. 20-0183, 2020 WL 7223533 at *1 (W. Va. Nov. 18, 2020). The Supreme Court of Appeals began its analysis with the language of Article III, § 6, which states as follows:

> [t]he rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.

*Id.* at *4 (quoting W. Va. Const. Art. III, § 6.). After parsing the history of decisions involving Article III of the West Virginia Constitution, the Court found no support for either an explicit or implied cause of action for constitutional claims under Article III, § 6. *Id.* at *7. Without that

---

[2] This point is not altogether clear, as Plaintiff has only cited *Hutchinson* in response to Defendants' argument, which also cites *Hutchinson*. (ECF No. 13 at 5.) Plaintiff finishes off his scant argument with an *ipse dixit*, stating in part that "[i]t is hard to imagine a scenario where a reasonable official would more clearly understand that what he is doing violates the right[.]" (*Id.* at 6.) Plaintiff points to no allegations to support this argument and cites to no legal authority to show that he has in fact made a particularized showing. This bare-bones and quixotic statement aside, Plaintiff's argument fails as shown above.

5

finding, the Court next turned to other jurisdictions to consider how other courts have addressed the issue. *Id.* The Court noted that the Supreme Court of the United States had at one time recognized constitutional torts but explained that in the time since, it had limited the extent to which an implied cause of action would be found in the constitutional context. *Id.* at *7–*8 (citing *Ziglar v. Abbasi*, ––– U.S. ––––, ––––, 137 S. Ct. 1843, 1857, 198 L. Ed. 2d 290 (2017).) The West Virginia Supreme Court then noted that "numerous state courts," relying on the Supreme Court's changed approach, had similarly declined to find such causes of action embedded within their respective constitutions. *Id.* at *9 (collecting cases) (noting that the existence of "alternative remedies" was typically the deciding factor in whether a state constitution provided a private cause of action). Based on these findings, the West Virginia Supreme Court held that "West Virginia does not recognize a private right of action for monetary damages for a violation of Article III, Section 6 of the West Virginia Constitution." *Id.* at *12.

The foregoing is ultimately fatal to Plaintiff's claim. Therefore, for the reasons stated more fully above, Defendants' motion is **GRANTED** as to Plaintiff's claim under Article III, § 6 of the West Virginia Constitution. Count I of Plaintiff's Complaint is hereby **DISMISSED**.

B. *Plaintiff's Claims Against the Lincoln County Sheriff's Department*

Defendants next argue that Plaintiff's vicarious liability claim, Count II, against the Department is subject to dismissal because the Department is an improperly-named party. (ECF No. 11 at 6.) Instead, Defendants assert that West Virginia law only authorizes the local governing body—in this case, the Lincoln County Commission—to sue or be sued. (*Id.*) Defendants argue that no such authorization exists for sheriff's departments, and thus the

Department cannot be sued. (*Id.* at 6–8.) Plaintiff has failed to respond in any form to Defendants' argument.

Plaintiff's failure to respond to this argument indicates that he has abandoned this claim. S*ee Brevard v. Racing Corp. of West Virginia*, Civ. Action No. 2:19-cv-578, 2020 WL 1860713 at *8 (S.D. W. Va. Apr. 13, 2020); *Taylor v. Clay Cty. Sheriff's Dep't*, No. 2:19-cv-00387, 2020 WL 890247, at *2 (S.D. W. Va. Feb. 24, 2020) (finding the plaintiff abandoned their claims because they failed to address the defendants' arguments); *Blankenship v. Necco, LLC*, No. 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion . . . can indicate that the non-moving party concedes the point or abandons the claim."). Even if Plaintiff had responded, however, it would have been to no avail.

Under West Virginia law, only the county commission, as the local governing body for a county, is authorized to sue or be sued.

> The county commission, formerly the county court, tribunal or county council in lieu thereof, of every county within the State of West Virginia shall be a corporation by the name of "The County Commission of .......... County", or "The County Council of .......... County" by which name it may sue and be sued, plead and be impleaded and contract and be contracted with.

W. Va. Code § 7-1-1(a). No other provision in the West Virginia Code authorizes sheriff's department to sue or be sued. *See Kowalyk v. Hancock Cnty.*, Civ. Action No. 5:08CV181, 2009 WL 981848 at *2 (N.D. W. Va. Apr. 9, 2009). The Fourth Circuit has recognized that "in the realm of county law enforcement," it is the "sheriff [who] is the duly delegated policy maker for the county." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989). "Therefore, a claim against the office of the sheriff is effectively a claim against the governing body of the of the County." *Kowalyk*, 2009 WL 981848 at *2 (internal quotation omitted).

Accordingly, Plaintiff has improperly named the Lincoln County Sheriff's Department as a party in this suit. Defendants motion is **GRANTED**, and the Lincoln County Sheriff's Department is hereby **DISMISSED** from this suit, with prejudice.

### C. *The Statutory Immunity Provided Under the West Virginia Governmental Tort Claims and Insurance Reform Act.*

Acknowledging the reality that claims asserted against county sheriff's departments are, in reality, directed against the governing body of the county, Defendants next argue that the immunity provisions of the West Virginia Governmental Tort Claims and Insurance Reform Act (the "Act") immunizes the County Commission from liability. (ECF No. 11 at 8.) Defendants argue that the "law enforcement exception" applies to this matter, which immunizes the County Commission because Plaintiff's claim resulted from the providing of law enforcement by the county. (*Id.* at 9–10.) Additionally, Defendants argue that the County Commission can only be liable in limited instances of negligence, whereas Plaintiff's allegations all encompass intentional acts. (*Id.* at 10.) Plaintiff counters that the County Commission was not actually providing law enforcement because Linville "abused his position as Sheriff." (ECF No. 13 at 4.)

Under the Act, a political subdivision cannot be held liable for any act or omission by an employee in connection with a government or proprietary function, except in five instances. W. Va. Code § 29-12A-4. Under the Act, a political subdivision can be held liable for only the following specific acts: (1) negligent operation of any vehicle by employees within the scope of employment; (2) negligent performance of acts by employees while acting within the scope of employment; (3) negligent maintenance of roads, sidewalks, and other similar pathways; (4) negligent act of an employee on political subdivision property; or (5) any other act in which

liability is specifically imposed on the political subdivision by another section of the West Virginia Code. W. Va. Code § 29-12A-4(c).

By the express terms of the Act, a political subdivision cannot be held liable for its employees' intentional malfeasance. *See Mallamo v. Town of Rivesville*, 477 S.E.2d 525, 533–34 (W. Va. 1996) ("In that conspiracy is an intentional act, not a negligent one, the Town of Rivesville would not be liable for any intentional malfeasance on the part of Wilson."). "[C]laims of intentional and malicious acts are included in the general grant of immunity in W. Va. Code, 29–12A–4(b)(1)." *Zirkle v. Elkins Road Public Serv. Dist.*, 655 S.E.2d 155, 160 (W. Va. 2007). Furthermore, the provisions of W. Va. Code § 29-12A-5(a)(5) establish that a political subdivision is entitled to immunity if the claim against it results from "the method of providing police, law enforcement or fire protection[.]"

First and foremost, there can be no question that the Complaint alleges that Sheriff Linville used excessive force in effectuating an arrest. (*See generally* ECF No. 1.) The challenge to Linville's use of force in effectuating that arrest is grounded in the method of providing police and law enforcement. *See Westfall v. Osborne*, Civ. Action No. 2:20-cv-00118, 2020 WL 6276145 at *6 (S.D. W. Va. Oct. 26, 2020); *Simerly v. Osborne*, Civ. Action No. 2:20-cv-00119, 2020 WL 6276147 at *6 (S.D. W. Va. Oct. 26, 2020). On this basis alone, the County Commission is immune from Plaintiff's claims. *See Westfall*, 2020 WL 6276145 at *6; *Simerly*, 2020 WL 6276147 at *6; *Taylor v. Clay Cnty. Sheriff's Dept.*, Civ. Action No. 2:19-cv-00387, 2020 WL 890247 at *6 (S.D. W. Va. Feb. 24, 2020).

Plaintiff's claims against the County Commission are subject to dismissal for another reason. None of the allegations against Linville or the County Commission are of negligent acts.

9

Rather, what has been alleged is a claim for excessive force, which this Court and others have held to be an intentional act. *See Rhodes v. King*, Civ. Action No. 2:19-cv-00626, 2020 WL 4607323 at *4 (S.D. W. Va. Aug. 11, 2020) (citing *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989)). By the Act's express terms, a political subdivision cannot be held liable for the intentional acts of its employees. *Zirkle v. Elkins Road Public Serv. Dist.*, 655 S.E.2d 155, 160 (W. Va. 2007).

Plaintiff responded to Defendants' arguments in one paragraph, in which he relied on the allegation that Sheriff Linville abused his position and provided no authority whatsoever to support his position. Despite the brevity of his counterargument, the response—woefully inadequate to begin—contains misspelled words and a bevy of punctuation and grammatical errors. Very simply, the lack of legal argument and sloppiness of the work has not gone unnoticed by the Court.

For the foregoing reasons, Defendants' motion is **GRANTED**. Plaintiff's state-law claims against the Lincoln County Commission are hereby **DISMISSED** in their entirety.

D. *Official Capacity Claims Against Sheriff Linville*

Defendants next argue that the claims asserted against Sheriff Linville "in his official capacity" are in reality "claims against the office which the official represents," and not against "the official personally." (ECF No. 11 at 12.) Because the claims are then really asserted against the County Commission, the Defendants argue that those claims are subject to dismissal for the same reasons as argued previously. (*Id.*) Plaintiff has again failed to meaningfully address this argument, save for a one-line response to Defendants' argument based on the West Virginia Governmental Tort Claims and Insurance Reform Act: "The claims against Sheriff Linville, in his official capacity, must be upheld for the same reasons." (ECF No. 13 at 4.)

Plaintiff's failure to respond to this argument indicates that he has abandoned this claim. See *Brevard*, 2020 WL 1860713 at *8; *Taylor*, 2020 WL 890247 at *2; *Blankenship*, 2018 WL 3581092 at *9. Even if Plaintiff had responded, however, it would have been to no avail.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Therefore, "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166.

Plaintiff has stated claims against Sheriff Linville in his official capacity. Those claims are essentially claims against the County Commission, and therefore duplicative. *See Daniels v. Wayne Cnty.*, Civ. Action No. 3:19-cv-0413, 2020 WL 2543298 at *4 (S.D. W. Va. May 19, 2020). For the foregoing reasons, Defendants' motion is **GRANTED**, and the official capacity claims against Sheriff Linville, therefore, are **DISMSSED** as duplicative.

  E. *Monell Claim*

Defendants next argue that Plaintiff's § 1983 claim against the County Commission fails because there are no allegations in the Complaint that Plaintiff's federal constitutional rights were violated pursuant to an official policy of or failure to train by the County Commission. (ECF No. 11 at 12–13.) Defendants also argue that, to the extent Plaintiff's § 1983 claim is premised on a "persistent and widespread custom" theory, such a claim also fails because of a failure to allege

adequate facts.³ (*Id.* at 16–17.) Plaintiff counters, however, that a previously-filed lawsuit against Sheriff Linville and the County Commission is sufficient to establish a pattern or policy such that liability may attach. (ECF No. 13 at 6.)

A municipality may be liable under 42 U.S.C. § 1983 if the municipality itself subjects an individual to a deprivation of rights or causes an individual to be subjected to such deprivation. *Connick v. Thompson*, 563 U.S. 51, 59 (2011) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)). A municipality cannot be vicariously liable for its employees actions under § 1983, but rather are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665–83). Therefore, to establish a § 1983 claim against a municipality, a plaintiff must show that the municipality caused his injury "pursuant to official municipal policy." *Monell*, 436 U.S. at 691. A plaintiff asserting a § 1983 claim against a municipality, then, must plead "(1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." *Poe v. Town of Gilbert, West Virginia*, Civ. Action No. 2:11-cv-00645, 2012 WL 3853200 at * 4 (S.D. W. Va. Sep. 5, 2012) (quoting *Alexander v. City of Greensboro*, 762 F.Supp.2d 764, 781 (M.D.N.C. 2011)).

Here, Plaintiff has alleged a failure-to-train theory to support his § 1983 claim against the County Commission. To establish municipal liability on a claim of failure to train, a plaintiff

---

³ Unfortunately, the same errors in Plaintiff's briefing make their appearance in his complaint, as well, making it similarly difficult for the Court to discern what is actually being plead as the basis for Plaintiff's § 1983 claim. (*See* ECF No. 1 (such errors include "in adequate" [*sic*] and sentence fragments).) However, as Defendants note, Plaintiff's response to the motion to dismiss indicates that he is advancing his § 1983 claim on an alleged failure to train theory.

12

must show that "the failure to train amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference, in the context of a failure to train, can be shown in one of two ways. First, a plaintiff may show a "pattern of similar constitutional violations" by municipal employees. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Second, a municipality may face liability for a single incident where the need for training concerning an officer's conduct was "plainly obvious." *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000).

Importantly, an alleged failure to train rises to the level of an unconstitutional custom or policy "only in those situations in which there is a history of widespread abuse." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983). "[A] municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. Newport News*, 743 F.2d 227, 230 (4th Cir. 1984). "Because *Monell* liability cannot be predicated on a theory of *respondeat superior,* a single incident is almost never enough to warrant municipal liability." *Estate of Jones v. City of Martinsburg*, *West Virginia*, 961 F.3d 661, 672 (4th Cir. 2020) (citing *Semple v. City of Moundsville*, 195 F.3d 708, 713–14 (4th Cir. 1999)). "A municipality is not liable for mere 'isolated incidents of unconstitutional conduct by subordinate employees. . . . Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice.'" *Smith v. Ray*, 406 Fed. App'x. 641, 650 (4th Cir. 2011) (quoting *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003)). As this Court has stated, "a policy or custom will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal

employees." *Myers v. City of Charleston*, Civ. Action No. 2:19-cv-00757, 2020 WL 4195005 at *8 (S.D. W. Va. July 21, 2020) (internal quotation omitted).

Plaintiff's response raises a previously-filed lawsuit[4] that was filed against the County Commission and Sheriff Linville as evidence of a "pattern" of "deliberate indifference to the rights of [Lincoln County's] inhabitants[.]" (ECF No. 13 at 6.) However, as this is a motion to dismiss, the Court must analyze the complaint to see if there are allegations sufficient to support a failure-to-train theory to establish municipal liability pursuant to *Monell*. With the exception of a lone mention to this prior lawsuit, there are no facts alleged that would support the failure-to-train theory. What Plaintiff has alleged with the mention of this lawsuit is an entirely conclusory statement, that the County Commission "had notice of defendant Linville's propensity for violence," one which the Court cannot accept for purposes of dealing with this motion. *See Rhodes*, 2020 WL 4607323 at *4; *Myers*, 2020 WL 4195005 at *8. Plaintiff has failed to allege any facts that could even hint at an official custom or policy, let alone establish one for the purposes of this motion. *See Myers*, 2020 WL 4195005 at *8 (dismissing *Monell* claim where plaintiffs failed to plead any facts from which an official policy could be inferred).

The Court again notes that the lawsuit upon which Plaintiff relies was dismissed without any admissions of liability. Beyond that, however, Plaintiff has failed to allege anything from which the Court could infer that the County Commission knew or had reason to know that its training was deficient. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause

---

[4] That lawsuit is styled *Miller v. Lincoln County Commission, et al.*, Civ. Action No. 2:18-cv-00412. The parties in that matter settled all claims without any admissions of liability, and the case was dismissed by order of Judge Copenhaver on October 12, 2018.

violations of constitutional rights." *Connick*, 563 U.S. at 62. As the United States District Court for the Eastern District of New York explained,

> the mere fact that a number of lawsuits have been filed, without any information as to whether the suits are meritorious or spurious, or alternatively, any evidence that the municipality ignored such complaints such that it constituted deliberate indifference to any potential problem of excessive force, does not assist a fact-finder in determining whether the [municipality] actually has a historical problem of its police officers using unconstitutionally excessive force in the performance of their duties.

*Ostroski v. Town of Southold*, 443 F.Supp.2d 325, 346 (E.D.N.Y. 2006). A passing reference to an isolated lawsuit in which no liability was established or admitted is hardly sufficient to support a failure-to-train *Monell* claim, and it certainly does not satisfy the pleading requirements of *Twombly* and *Iqbal*. *See also Honaker v. Town of Sophia*, Civ. Action No. 5:15–CV–03483, 2015 WL 4660082 at *5 (S.D. W. Va. Aug. 5, 2015).

For the foregoing reasons, Defendants' motion is **GRANTED** as to Plaintiff's *Monell* claim. Plaintiff's claim against the County Commission pursuant to 42 U.S.C. § 1983 is hereby **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss, (ECF No. 10), is **GRANTED**. First, Plaintiff's claim under Article III, § 6 of the West Virginia Constitution is **DISMISSED**. Further, Plaintiff's claims against both the Lincoln County Commission and the Lincoln County Sheriff's Department are hereby **DISMISSED**, and the County Commission and Sheriff's Department are **DISMISSED** from this suit. Finally, all claims asserted against Sheriff Linville in his official capacity are hereby **DISMISSED** as duplicative.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 25, 2021

THOMAS E. JOHNSTON, CHIEF JUDGE